**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| CLAYTON W. CREASON, individually and on behalf of others similarly situated, | ) ) ) | |
| Plaintiff | ) ) | |
| vs. | ) ) | CASE NO. 1:22-CV-00853-RLY-MPB |
| ELANCO US INC., | ) ) | **CLASS ACTION COMPLAINT** |
| Defendant | ) ) | |

*PLAINTIFF'S THIRD AMENDED[1] CLASS ACTION AND INDIVIDUAL COMPLAINT FOR DAMAGES*

Plaintiff Clayton W. Creason (hereinafter "Creason"), individually and on behalf of others similarly situated, by his counsel, for his cause of action against Defendant Elanco US Inc. (hereinafter "Elanco"), states as follows:

*I. FACTUAL ALLEGATIONS*

*A. The Parties*

1.     Creason resides in Terre Haute, Vigo County, Indiana. Creason is a citizen of the State of Indiana.

2.     Creason was employed by Elanco as an engineer from approximately November 2017 until the date of Creason's voluntary resignation from employment on November 5, 2021. In his last job for Elanco, Creason served as the company's Reliability Engineer.  Creason

---

[1]Creason files his Third Amended Complaint as a matter of course pursuant to FRCP 15(a)(1)(B), as this amended complaint is filed for the first time after a responsive pleading was filed by Defendant (on June 10, 2022) under Rule 12(b). This Third Amended Complaint is filed within 21 days of that June 10, 2022 motion.

1

worked for Elanco at its Clinton, Vermillion County, Indiana manufacturing facility. Elanco was formed under the incorporation laws of the State of Indiana. Elanco's headquarters sit in the State of Indiana. Elanco is a citizen of the State of Indiana.

3.    Elanco employs many Rule 23 class members in the United States, with many employees in Indiana, Iowa and Maine. Based upon investigation, hundreds of employees, if not thousands of employees, were subjected to wage deductions Elanco called "Vacation Buy" or some similar phrase in the same way and for the same reasons as Creason was subjected to "Vacation Buy" wage deductions.  Just as true of Creason, these hundreds or thousands of coworkers were subjected to "Vacation Buy" wage deductions without first having signed a wage assignment which fully complied with I.C. 22-2-6-2. Elanco has been consistently taking the "Vacation Buy" wage deductions from Rule 23 class members' wages since February 1, 2020 and earlier.

### B.  Creason's Individual Paid Vacation Allegations

4.    Elanco paid Creason's wages on a salary basis.  At the time Creason ended his employment at Elanco, his salary was approximately $105,000.00 per annum (just slightly more than $2,000.00 per week gross).

5.    Throughout his employment with Elanco, Creason did good work and met all of Elanco's reasonable expectations.

6.    Additionally, when he decided to resign from employment, Creason provided his Elanco supervisors and managers notice, and worked out a two-week notice period before actually resigning on November 5, 2021.

7.    As a term and condition of his employment with Elanco, Creason earned vacation

2

pay.  On the November 5, 2021 date of his termination, Creason obtained a wage record from Elanco indicating that Elanco owed him at least accrued vacation pay balances equal to 60 hours of paid wages, an amount equal to slightly more than Three Thousand Dollars ($3,000.00). Creason had also received an October 27, 2021 email from Elanco Human Resources representative Timothy Rick promising Creason his "earned unused vacation will be paid out." Additionally, in a separate November 1, 2021 email, Timothy Rick promised Creason "You will get paid for what you earned and did not use." Creason had not been paid any unused vacation pay at that point and did not use his accrued hours and he actually still had 60 hours of paid vacation time owed to him after his employment ended on November 5, 2021.

8.      Despite this negotiated term of employment compensation, Elanco has failed and continues to fail to pay Creason his accrued vacation pay.  Creason is owed slightly more than Three Thousand Dollars ($3,000.00) in accrued vacation pay owed at the time he ended his employment.  Elanco's failure to pay Creason his accrued vacation wages has been an act of bad faith, particularly as Creason has spent months on his own seeking payment of the vacation wages and Elanco's human resources representative has promised payment to Creason in multiple email communications.  Elanco's failure to pay Creason his earned vacation pay has certainly not been an act of "good faith," as would be required under I.C. 22-2-5-2. With liquidated damages under I.C. 22-2-5-2, Elanco owes Creason damages of more than Nine Thousand Dollars ($9,000.00) plus payment of Creason's attorney's fees and costs.

### C. Rule 23 and Individual Allegations Based Upon "Vacation Buy" Wage Deductions

9.      Moreover, as related to its vacation policies and programs, Elanco subjected Creason to illegal wage deductions in a wage deduction category it called "Vacation Buy."  As a

3

specific example, in calendar year 2021, Elanco deducted from Creason the sum of $1,759.38 in the wage deduction category it called "Vacation Buy." Elanco deducted similar sums from Creason's wages in the category of "Vacation Buy" during calendar year 2020. In Creason's last pay check from Elanco, Elanco deducted $83.78 from Creason's wages in the category of "Vacation Buy." A copy of Creason's November 15, 2021 pay stub is attached hereto as Exhibit 1 and incorporated herein as part of Creason's Complaint.

10.     In the same or similar manner, Elanco subjected hundreds, if not thousands, of Creason's fellow Elanco employees to the same type of illegal wage deductions in the category Elanco called "Vacation Buy." Elanco was deducting "Vacation Buy" sums similar to Creason's $83.78 deduction taken from Creason's last pay check from Rule 23 class members' pay checks each paycheck. These deductions were taken as "Vacation Buy" wage deductions from the wages of each class member participating in Elanco's "Vacation Buy" program. Cumulatively, Creason believes Elanco deducted millions of dollars from Rule 23 class members from February 1, 2020 to the present. Particularly with the potential for liquidated damages under I.C. 22-2-5-2, Creason believes it is possible (although he does not have information sufficient to state so with certainty) that there is greater than $5,000,000.00 in controversy in the class action case.

11.     As described above, a substantial percentage of Rule 23 class members are citizens of states other than Indiana, with many living as citizens of the states of Iowa and Maine. Additionally, a number of Rule 23 class members who work for Elanco in Vermillion County, Indiana actually live in and are citizens of the State of Illinois.

12.     Creason is specifically alleging that Elanco has taken illegal deductions from his wages and similarly from the wages of Rule 23 class members in violation of the Indiana Wage

Assignment Statute, I.C. 22-2-6-2. In so doing, Elanco has failed and refused to pay Creason and Rule 23 class members their wages in full in each and every week in 2020 and 2021 Elanco took one of its "Vacation Buy" pay roll deductions from Creason and fellow Rule 23 class members' wages.

13.     Elanco had and has no legal authority to deduct a "Vacation Buy" from Creason's wages or the wages of any other Rule 23 class member, particularly as Elanco did not fully comply with I.C. 22-2-6-2(a), by first obtaining from Creason and/or each other Rule 23 class member a signed, written authority which fully complied I.C. 22-2-6-2 (for example, Elanco did not have Creason or the Rule 23 class members sign wage assignments that told them the "Vacation Buy" wage assignment could be revoked at any time if the signer did so in writing to the employer) and would allow Elanco to deduct amounts in the "Vacation Buy" category.

14.     Moreover, as will be developed more in discovery, Creason alleges and asserts that Elanco's "Vacation Buy" program is not a bona fide IRS Code Section 125 plan (cafeteria plan), nor is the "Vacation Buy" program a legitimate reason for any deduction under I.C. 22-2-6-2(b).  Specifically, Elanco illegally and improperly has forced (or claims to have forced) Creason and fellow Rule 23 class members to use "purchased vacation" time before requiring Creason and Rule 23 class members to fully exhaust company-provided vacation time.  Elanco used this excuse, at least in part, for failing to pay Creason his unused vacation wages when he resigned employment in Fall 2021.

15.     Elanco intentionally and knowingly violated Creason's rights to earned wages and Rule 23 class members' rights to earned wages through Elanco's unlawful wage deduction practice.

16.    Additionally, based upon information, belief and early investigation, Elanco deceived Creason and putative class members about the "Vacation Buy" program altogether. Despite obvious fiduciary duties and obligations to do so, Elanco has not set up any kind of trust account or any type of "Vacation Buy" fund into which it deposits and/or invests "Vacation Buy" wage deductions taken from employees' wages. No trustee safeguards or administers the "Vacation Buy" monies for the benefit of participating employees. Elanco did not and does not pay "Vacation Buy" benefits to participating employees from any "Vacation Buy" trust fund, account or under any "Vacation Buy" benefit plan. Instead, Elanco keeps the "Vacation Buy" wage deductions for itself, interest-free. Based upon information and belief, Elanco is simply keeping the "Vacation Buy" wage deduction amounts in its general corporate accounts and is making use of that money for its own benefit and purposes, and to the detriment of Creason and putative class members.  Elanco does not segregate or separate the "Vacation Buy" monies and preserve those monies for the benefit of participating employees. Elanco does not invest the "Vacation Buy" monies, nor does it place the money in any interest bearing account. Worse, as Elanco did to Creason and many other class members, Elanco has been both 1) keeping the "Vacation Buy" monies it deducted for itself and its own use, and 2) not providing the extra week of vacation the "Vacation Buy" monies were intended to pay for and provide.

17.    Elanco intentionally and knowingly violated Creason's rights to "Vacation Buy" funds and Rule 23 class members' rights to "Vacation Buy" funds through Elanco's breach of its duties and its unauthorized taking of "Vacation Buy" funds for its own purposes rather than for the benefit of Creason and putative class members.

18.    Elanco previously removed this claim to Federal Court from the Vermillion

Circuit Court pursuant to the Class Action Fairness Act ("CAFA"). The added and amended claims will not affect the Court's jurisdiction under CAFA, as the basis for removal remains the same after the amended claims are added.

## II. CLASS ACTION ALLEGATIONS

19.     As described above, Creason believes and asserts that multiple hundreds, if not thousands of Elanco employees who are Elanco participants in the "Vacation Buy" program have been similarly subjected to Elanco's unlawful "Vacation Buy" wage deductions and harmed by Elanco's "Vacation Buy" program.

20.     By way of this Complaint, Creason seeks for himself and for all other similarly situated employees and former employees of Elanco throughout the United States, all unpaid wages (illegally deducted wages in the "Vacation Buy" category), all "Vacation Buy" funds, compensatory damages, punitive damages, and any and all liquidated damages owed to each. Additionally, Creason seeks payment of his reasonable attorney's fees, costs and expenses.

21.     As an Indiana employer, Elanco is liable for payment of unpaid wages, liquidated damages, attorney's fees and costs under the Indiana Wage Payment Statute owed to Creason and other members of the class regardless of where Creason and/or each member of the class physically worked.  See *Huff v. Biomet, Inc.,* 654 N.E.2d 830, 834–35 (Ind. Ct. App. 1995)*, abrogated on other grounds by *St. Vincent Hosp. & Health Care Ctr., Inc. v. Steele*, 766 N.E.2d 699 (Ind. 2002) ("The Wage Payment Statute does not impose any restriction on the employee but instead the plain language of the statute dictates that the applicability of the Wage Payment Statute rests solely upon whether the employer is doing business in Indiana. *See* I.C.

22–2–5–1(a). Because Biomet was a corporation doing business in Indiana, we determine that it was subject to the Wage Payment Statute.").

22.     With respect to FRCP 23(b)(3) class action claims under the Indiana Wage Payment Statute, Creason will serve as class representative over a proposed class.  The class will be as follows:

> Creason will serve as class representative for the class-wide claims brought under the Indiana Wage Payment Statute, the Indiana Crime Victim's Statute and Indiana common law. This action is filed as a class action pursuant to Rule 23 of the Indiana Rules of Trial Procedure on behalf of Creason and on behalf of all eligible Elanco employees who participated in the Elanco "Vacation Buy" program and were subjected to one or more "Vacation Buy" wage deductions from February 1, 2020 to present. By virtue of the class action, Creason represents the identical and/or similar interests of former and current coworkers denied wages and/or "Vacation Buy" funds under the same circumstances.

23.     Based upon information and belief, the number of potential class members is believed to be more than several hundred individuals, however, the actual number of Elanco's current and former employees who will be members of this class action is so great (numerosity) that joinder of all members is impractical.  Instead, Creason will pursue discovery to obtain the names of the other current and former Elanco employees, to provide notice of the class action and to offer the opt out opportunity.

24.     Particularly with the types of "Vacation Buy" wage claims and practices at issue in this case, there are questions of law and fact that are common to the entire class.

25.     Creason's claims are typical of the claims of the whole class of current and former Elanco employees who participated in the "Vacation Buy" program and were harmed by Elanco's illegal wage practices and illegal and/or tortious practices.

26.     Creason will act to fairly and adequately protect the interests of the entire Rule 23 class of current and former Elanco employees were subjected to one or more "Vacation Buy" wage deductions.

27.     A class action is superior to other available means for the fair and efficient prosecution of these wage claims against Elanco.  For example, to prove Elanco's illegal wage deduction and "Vacation Buy" practices, Creason and other members of this class would seek in discovery records about all similarly situated current and former Elanco employees who were similarly denied earned wages and monies due to unlawful "Vacation Buy" wage deductions. Individual lawsuits by the members of the collective group/class could lead to 1) inconsistent or varying outcomes in the cases, 2) duplicitous discovery, or 3) competition for limited funds. Further, as a practical matter, the first litigant to trial may achieve a result which would have bearing on all of the other individuals in the group.

28.     A determination regarding the "similarness" of those able to participate in the class action would also allow litigation of claims that may not otherwise be cost effective, depending upon the amount of each individual group member's damages.  Particularly with the type of Indiana statutory wage violations and Indiana legal claims at issue in this litigation, some, if not most, of the individual group members may not be aware of their rights to their wages under Indiana law, or may not, because of financial means or experience, be in a position to seek the assistance of counsel to commence individual litigation.

29.     A class action will result in an orderly and expeditious administration of the class members' claims, and economies of time, court resources, effort and expense, and uniformity of decisions will be assured.

### III.  STATEMENT OF CLAIMS

**A.  Class Action Claims Under Indiana Wage Payment Statute Based Upon "Vacation Buy" Wage Deductions**

30.    Plaintiff hereby incorporates by reference the material allegations stated in rhetorical paragraphs 1 through 29 of the Complaint for Damages as set forth herein.

31.    Elanco subjected Creason and all Elanco participants in the "Vacation Buy" program to illegal wage deductions that violated the mandatory requirements of the Indiana Wage Assignment Statute.  See I.C. 22-2-6-2.

32.    Creason is specifically alleging that Elanco has taken illegal deductions in violation of the Indiana Wage Assignment Statute, I.C. 22-2-6-2, and in so doing, Elanco has failed and refused to pay Creason and each and every other similarly situated Elanco participant in the "Vacation Buy" program his/her wages in full each and every pay period Elanco took a "Vacation Buy" wage deduction from an employee.

33.    Every Elanco participant in the "Vacation Buy" program was harmed in the exact same way, regardless of where the employee worked for Elanco in the United States and regardless of whether the employee was paid on a salary or on an hourly-paid basis.  Moreover, all of the illegal conduct, the wage deductions, has been occurring in the State of Indiana.

34.    Elanco has and had no legal authority to take any of the wage deductions at issue in this class action lawsuit, because Elanco did not have valid, signed, written wage assignments from any class member which complied with all of the mandatory requirements of the Indiana Wage Assignment Statute, I.C. 22-2-6-2, which is necessary to allow Elanco to legally take certain types of deductions from its employees' wages.

35.     For purposes of this class action lawsuit, Creason is similarly situated to all Elanco participants in the "Vacation Buy" program who were subjected to one or more unlawful wage deduction in the category Elanco called "Vacation Buy" and pursuant to Elanco's company-wide "Vacation Buy" program.

36.     At all times relevant to this lawsuit, Elanco did not have a wage assignment from Elanco participants in the "Vacation Buy" program that was: "(A) in writing; (B) signed by the employee personally; (C) by its terms revocable at any time by the employee upon written notice to the employer; and (D) agreed to in writing by the employer."  See I.C. 22-2-6-2(a)(1).

37.     Creason was an actual victim of Elanco's unlawful wage deductions called "Vacation Buy" during his employment.

38.     Elanco intentionally and knowingly violated its employees' rights to earned wages through Elanco's illegal wage assignment and wage deduction practices.

39.     Elanco's class-wide, illegal wage deductions constitute intentional, deliberate and bad faith violations of the Indiana Wage Payment Statute that should subject the company to liquidated damages.

40.     In Creason's case, as has been true in the cases of many current and former Elanco participants in the "Vacation Buy" program, Elanco has failed and refused to make a payment of all accrued wages on the date those wages became due, all in violation of the Indiana Wage Payment Statute.

41.     Important to this class action complaint, the Indiana Wage Payment Statute provides specific protections to wage earners which may not be waived or contracted away.

### B. Class Action Claims for Criminal Conversion[2] Under Indiana Crime Victim's Relief Statute

42.    Plaintiff hereby incorporates by reference the material allegations stated in

rhetorical paragraphs 1 through 41 of the Complaint for Damages as set forth herein.

43.    As described hereinabove, Elanco committed individual and class-wide acts

of criminal conversion, in violation of I.C. 35-43-4-3, each time it took and kept for itself a

"Vacation Buy" amount from a Plaintiff and/or Plaintiff Class Member. Elanco knowingly and

intentionally exerted unauthorized control over Plaintiffs' "Vacation Buy" funds, which were

specific dollar amounts and special chattel intended for the dedicated purposes of paying

---

[2]Elanco filed a June 10, 2022 Brief [Dkt. 17.] containing the following assertion:

"Engineer Clayton Creason participated in his employer's "Vacation Buy" program for almost two years between 2019 and 2020. In exchange for the addition of vacation days to those work years, the program reduced Creason's annual and periodic pay."

[Dkt. 17 at 1.] This statement is an outright lie, but more important to that earlier FRCP 12(b)(6) motion, this statement was never alleged by Creason in his Complaint, nor will it be alleged. Creason never agreed to reduce his weekly or annual salary, nor did he allege as much in his Complaint.

That said, if the Court were to believe Elanco's June 10, 2022 lie, Creason can certainly allege civil claims for theft, criminal conversion, tortious conversion and unjust enrichment. This is particularly true if Elanco is admitting it lied to Creason and putative class members about annual and weekly salary amounts (which show on pay stubs and Elanco now claims it exaggerated), the fact of "Vacation Buy" wage "deductions" (which also show on pay stubs), or the existence of any type of "Vacation Buy" trust account, fund, benefit plan or program. Stated differently, if Elanco admits it reduced class member wages by amounts it promised to use to fund a "Vacation Buy" program that simply never existed, Elanco violated other laws in addition to the Indiana Wage Payment Statute.

FRCP 8(d)(2) permits alternative pleading. Creason expects, after discovery, he will prove that no evidence exists to show he or class members agreed to reduce weekly or annual salary and, moreover, forms and especially the pay stubs will show 1) Creason's full agreed upon salary (not the "reduced" amount Elanco claims), 2) the "Vacation Buy" wage "deduction (Elanco's words) that Creason was subjected to each pay period, and 3) the fact that Elanco treated the "Vacation Buy Deduction" as a wage deduction for pay roll and income tax purposes. Additionally, if its June 10, 2022 allegation were true (it's not), Elanco is admitting that it violated FLSA and Indiana law wage recordkeeping laws if it claims it lied about inflated weekly salaries and non-existent wage deductions on pay stubs. See 29 USC § 211(c), I.C. 22-2-2-8 and I.C. 22-1-1-15.

Plaintiffs' paid vacation for an extra purchased vacation week. Stated differently, the "Vacation Buy" funds were entrusted by Plaintiffs to Elanco to apply to a special purpose, paid vacation time for one additional, purchased vacation week. Rather than segregate the "Vacation Buy" funds into a trust account or fund kept for participating employees' benefit, Elanco wrongfully took possession and kept the "Vacation Buy" funds itself and for Elanco's own unauthorized and wrongful purposes.  Moreover, Elanco wrongfully and illegally enriched itself, for its benefit and to Creason and putative class members' harm, by retaining "Vacation Buy" funds that were specifically collected for the intended purpose of providing paid vacation time and for purchasing one additional week of vacation time. As a specific example, in 2021, Elanco deducted a cumulative total of $1,759.38 from Creason's earned wages. Creason gave Elanco two weeks' notice and voluntarily resigned his employment in later 2021. Creason had not been provided his one additional week of vacation purportedly purchased with the "Vacation Buy" wage deductions. Elanco kept for itself and did not refund the $1,759.38 it collected from Creason in 2021 and Creason did not benefit from any additional vacation time. Based upon information and belief, Elanco converted and enriched itself with "Vacation Buy" funds belonging to many other putative class members in the same way. Additionally, Elanco's conversion of putative class members' "Vacation Buy" funds permitted Elanco to enrich itself by 1) taking the money for its own use, interest-free, 2) co-mingling the "Vacation Buy" money in its general account(s) and using the money for its own purposes and expenditures, and 3) in cases such as Creason's case, simply keeping for itself (and not refunding) "Vacation Buy" funds that were never used for the employees' benefit.

44.    Elanco knowingly, intentionally and wrongfully retained for itself significant

13

(believed to be one to two million dollars during the covered period of time) sums of "Vacation Buy" funds without Creason and putative class members' authorization and to Creason and putative class members' detriment.

45.    All acts of criminal conversion of "Vacation Buy" participants' funds occurred in the State of Indiana, particularly as all of Elanco's acts of unauthorized control of Plaintiffs' "Vacation Buy" funds occurred in Indiana and Elanco's retention and control of all "Vacation Buy" funds occurred in Indiana.[3]

46.    As a direct and proximate result of Elanco's repeated and class-wide acts of criminal conversion, Creason and all putative class members have suffered injuries and damages. All Plaintiffs subjected to one or more "Vacation Buy" wage deduction by Elanco have been victims of criminal conversion and have suffered substantial, class-wide pecuniary losses.

47.    As a direct and proximate result of Elanco's conversion of Creason and putative class members' "Vacation Buy" funds collected, the Plaintiff class is entitled to damages under the Indiana Crime Victim's Relief Act. On a class-wide basis, Plaintiffs are entitled to an amount equal to three times the sum of all "Vacation Buy" funds criminally converted by Elanco, plus attorney's fees, costs and expenses, along with all travel expenses and direct and indirect expenses incurred by Plaintiffs related to any court proceedings, along with any and all other relief available to Plaintiffs under I.C. 34-24-3-1.

### C. Class Action Claims for Theft Under Indiana Crime Victim's Relief Statute

48.    Plaintiff hereby incorporates by reference the material allegations stated in

---

[3]An action for conversion is governed by the law of the place where the conversion occurred. *Lambert v. Yellowbird, Inc.*, 496 N.E.2d 406, 409 (Ind. App. 1986)

rhetorical paragraphs 1 through 47 of the Complaint for Damages as set forth herein.

49.    As described hereinabove, Elanco committed individual and class-wide acts of theft, in violation of I.C. 35-43-4-2, each time it took and kept for itself a "Vacation Buy" amount from a Plaintiff and/or Plaintiff Class Member. Elanco knowingly and intentionally engaged in theft with the intent to deprive Creason and every putative class member of the <u>value</u> of each "Vacation Buy" wage deduction collected, when it exerted unauthorized control over Plaintiffs' "Vacation Buy" funds, which were specific dollar amounts and special chattel intended for the dedicated purposes of paying Plaintiffs' paid vacation for an extra purchased vacation week. Stated differently, the "Vacation Buy" funds were entrusted by Plaintiffs to Elanco to apply to a special purpose, paid vacation time for one additional, purchased vacation week. Rather than segregate the "Vacation Buy" funds or the value of those funds into a trust account or fund kept for participating employees' benefit, Elanco wrongfully took possession and kept the "Vacation Buy" funds and/or the value of those funds for itself and for Elanco's own unauthorized and wrongful purposes.  Moreover, Elanco wrongfully and illegally enriched itself, for its benefit and to Creason and putative class members' harm, by retaining "Vacation Buy" funds or the value of those funds that were specifically collected for the intended purpose of providing paid vacation time and for purchasing one additional week of vacation time. As a specific example, in 2021, Elanco deducted a cumulative total of $1,759.38 from Creason's earned wages. Creason gave Elanco two weeks' notice and voluntarily resigned his employment in later 2021. Creason had not been provided his one additional week of vacation purportedly purchased with the "Vacation Buy" wage deductions. Elanco kept for itself and did not refund the $1,759.38 it collected from Creason in 2021 and Creason did not benefit from any additional

vacation time. Based upon information and belief, Elanco committed theft and enriched itself with "Vacation Buy" funds belonging to many other putative class members in the same way. Additionally, Elanco's theft of putative class members' "Vacation Buy" funds permitted Elanco to enrich itself by 1) taking the money for its own use, interest-free, 2) co-mingling the "Vacation Buy" money in its general account(s) and using the money for its own purposes and expenditures, and 3) in cases such as Creason's case, simply keeping for itself (and not refunding) "Vacation Buy" funds that were never used for the employees' benefit.

50.     Elanco knowingly, intentionally and wrongfully retained for itself significant (believed to be one to two million dollars during the covered period of time) sums of  "Vacation Buy" funds without Creason and putative class members' authorization and to Creason and putative class members' detriment.

51.     All acts of theft of "Vacation Buy" participants' funds occurred in the State of Indiana, particularly as all of Elanco's acts of unauthorized control of Plaintiffs' "Vacation Buy" funds (or the value thereof) occurred in Indiana and Elanco's retention and control of all "Vacation Buy" funds occurred in Indiana.

52.     As a direct and proximate result of Elanco's repeated and class-wide acts of theft, Creason and all putative class members have suffered injuries and damages.  All Plaintiffs subjected to one or more "Vacation Buy" wage deduction by Elanco have been victims of theft and have suffered substantial, class-wide pecuniary losses.

53.     As a direct and proximate result of Elanco's theft of Creason and putative class members' "Vacation Buy" funds collected, the Plaintiff class is entitled to damages under the Indiana Crime Victim's Relief Act. On a class-wide basis, Plaintiffs are entitled to an amount

equal to three times the sum of all "Vacation Buy" funds stolen and/or converted by Elanco, plus

attorney's fees, costs and expenses, along with all travel expenses and direct and indirect

expenses incurred by Plaintiffs related to any court proceedings, along with any and all other

relief available to Plaintiffs under I.C. 34-24-3-1.

### D.  Class Action Claims for Conversion Under Indiana Common Law

54.     Plaintiff hereby incorporates by reference the material allegations stated in

rhetorical paragraphs 1 through 53 of the Complaint for Damages as set forth herein.

55.     As described hereinabove, Elanco committed individual and class-wide acts

of tortious conversion, in violation of Indiana common law, each time it took and kept for itself a

"Vacation Buy" amount from a Plaintiff and/or Plaintiff Class Member. Elanco exerted

unauthorized control over Plaintiffs' "Vacation Buy" funds, which were specific dollar amounts

and special chattel intended for the dedicated purposes of paying Plaintiffs' paid vacation for an

extra purchased vacation week. Stated differently, the "Vacation Buy" funds were entrusted by

Plaintiffs to Elanco to apply to a special purpose, paid vacation time for one additional,

purchased vacation week. Rather than segregate the "Vacation Buy" funds into a trust account or

fund kept for participating employees' benefit, Elanco wrongfully took possession and kept the

"Vacation Buy" funds itself and for Elanco's own unauthorized and wrongful purposes.

Moreover, Elanco wrongfully and illegally enriched itself, for its benefit and to Creason and

putative class members' harm, by retaining "Vacation Buy" funds that were specifically collected

for the intended purpose of providing paid vacation time and for purchasing one additional week

of vacation time. As a specific example, in 2021, Elanco deducted a cumulative total of

$1,759.38 from Creason's earned wages. Creason gave Elanco two weeks' notice and voluntarily

resigned his employment in later 2021. Creason had not been provided his one additional week of vacation purportedly purchased with the "Vacation Buy" wage deductions. Elanco kept for itself and did not refund the $1,759.38 it collected from Creason in 2021 and Creason did not benefit from any additional vacation time. Based upon information and belief, Elanco converted and enriched itself with "Vacation Buy" funds belonging to many other putative class members in the same way. Additionally, Elanco's conversion of putative class members' "Vacation Buy" funds permitted Elanco to enrich itself by 1) taking the money for its own use, interest-free, 2) co-mingling the "Vacation Buy" money in its general account(s) and using the money for its own purposes and expenditures, and 3) in cases such as Creason's case, simply keeping for itself (and not refunding) "Vacation Buy" funds that were never used for the employees' benefit.

56.    Elanco wrongfully retained for itself significant (believed to be one to two million dollars during the covered period of time) sums of  "Vacation Buy" funds without Creason and putative class members' authorization and to Creason and putative class members' detriment.

57.    All acts of tortious conversion of "Vacation Buy" participants' funds occurred in the State of Indiana, particularly as all of Elanco's acts of unauthorized control of Plaintiffs' "Vacation Buy" funds occurred in Indiana and Elanco's retention and control of all "Vacation Buy" funds occurred in Indiana.

58.    As a direct and proximate result of Elanco's repeated and class-wide acts of tortious conversion, Creason and all putative class members have suffered injuries and damages. All Plaintiffs subjected to one or more "Vacation Buy" wage deduction by Elanco have been victims of tortious conversion and have suffered substantial, class-wide pecuniary losses.

59.    Moreover, as described hereinabove, Elanco's tortious conversion of Creason and

18

putative class members' "Vacation Buy" funds was performed in a manner which was willful, harmful, wanton and undertaken with a callous disregard of Plaintiffs' rights under Indiana law. Punitive damages in this claim are appropriate to deter Elanco from such conduct in the future and to serve the public good.

60.     As a direct and proximate result of Elanco's conversion of Creason and putative class members' "Vacation Buy" funds collected, the Plaintiff class is entitled to damages under Indiana law. On a class-wide basis, Plaintiffs are entitled to all actual damages, all compensatory damages, punitive damages, prejudgment interest, along with any and all other relief available to Plaintiffs under Indiana law.

### E.  Class Action Claim for Unjust Enrichment Under Indiana Law
### (Pleaded in the Alternative)

61.     Plaintiff hereby incorporates by reference the material allegations stated in rhetorical paragraphs 1 through 60 of the Complaint for Damages as set forth herein.

62.     Creason and fellow putative class members were in at will employment relationships with Elanco during the time each was subjected to one or more "Vacation Buy" wage deductions. At will employment is a contractual relationship. As terms and conditions of this contractual at will employment relationship, Elanco represented to Plaintiffs that it was deducting "Vacation Buy" sums as part of a purchased additional week of vacation "benefit" or program.

63.     As described hereinabove, Elanco knowingly and intentionally made false and/or misleading representations to Plaintiffs about the "Vacation Buy" wage deduction program with the intent to obtain money - here, Plaintiff's "Vacation Buy" wage deductions or the monetary value thereof - which were specific dollar amounts and special chattel intended for the dedicated

purposes of paying Plaintiffs' paid vacation for an extra purchased vacation week. Stated differently, the "Vacation Buy" funds were entrusted by Plaintiffs to Elanco to apply to a special purpose, paid vacation time for one additional, purchased vacation week. Rather than segregate the "Vacation Buy" funds into a trust account or fund kept for participating employees' benefit, Elanco wrongfully took possession and kept the "Vacation Buy" funds itself and for Elanco's own unauthorized and wrongful purposes. Moreover, Elanco wrongfully and unjustly enriched itself, for its benefit and to Creason and putative class members' harm, by retaining "Vacation Buy" funds that were specifically collected for the intended purpose of providing paid vacation time and for purchasing one additional week of vacation time. As a specific example, in 2021, Elanco deducted a cumulative total of $1,759.38 from Creason's earned wages. Creason gave Elanco two weeks' notice and voluntarily resigned his employment in later 2021. Creason had not been provided his one additional week of vacation purportedly purchased with the "Vacation Buy" wage deductions. Elanco kept for itself and did not refund the $1,759.38 it collected from Creason in 2021 and Creason did not benefit from any additional vacation time. Based upon information and belief, Elanco converted and enriched itself with "Vacation Buy" funds belonging to many other putative class members in the same way. Additionally, Elanco's conversion of putative class members' "Vacation Buy" funds permitted Elanco to enrich itself by 1) taking the money for its own use, interest-free, 2) co-mingling the "Vacation Buy" money in its general account(s) and using the money for its own purposes and expenditures, and 3) in cases such as Creason's case, simply keeping for itself (and not refunding) "Vacation Buy" funds that were never used for the employees' benefit.

64.    Elanco knowingly, intentionally and unjustly retained for itself significant

(believed to be one to two million dollars during the covered period of time) sums of "Vacation Buy" funds without Creason and putative class members' authorization and to Creason and putative class members' detriment.

65.     Creason and all putative class members relied upon Elanco's promises and its descriptions of the "Vacation Buy" program.  Creason and all putative class members' reliance upon Elanco were to their detriment and to Elanco's unjust enrichment and benefit.

66.     Unjust enrichment is a quasi-contractual claim. All acts of unjust enrichment - the unlawful taking and use of the "Vacation Buy" participants' funds - occurred in the State of Indiana, particularly as all of Elanco's acts of unauthorized control of Plaintiffs' "Vacation Buy" funds occurred in Indiana and Elanco's retention and control of all "Vacation Buy" funds occurred in Indiana.

67.     Allowing Elanco to keep "Vacation Buy" funds it took from Creason and all putative class members and promised to use for the Plaintiffs' benefit would be unjust. It would be unjust to allow Elanco to keep the unlawfully retained "Vacation Buy" funds (including all "Vacation Buy" funds kept when the class member did not even receive an extra vacation week, plus all monetary value of Elanco's interest-free use of the "Vacation Buy" funds) without ordering Elanco to make restitution to Creason and all putative class members.

68.     As a direct and proximate result of Elanco's unjust enrichment of itself by taking Creason and all putative class members' "Vacation Buy" funds, Plaintiffs are entitled to all equitable damages available under Indiana law, including full restitution of all deducted "Vacation Buy" wages and/or funds, plus all available interest, payment of all attorney's fees and costs, and any and all other equitable relief available to the Plaintiffs under Indiana law.

### F. *Creason's Individual Vacation Pay Claim Based Upon Violation of the Indiana Wage Payment Statute*

69.     Creason hereby incorporates by reference the material allegations stated in rhetorical paragraphs 1 through 68 of the Complaint for Damages as set forth herein.

70.     The Indiana Wage Payment Statute, Ind. Code § 22-2-5-1, requires payment by an employer of the *amount due the employee*, and requires that payment be made *for all wages earned* in accordance with that section.

71.     Elanco's failure to timely pay Creason his earned, accrued and unused vacation wages in his final pay check due immediately after Creason's final day of employment constitutes a violation of I.C. 22-2-5, the Indiana Wage Payment Statute.  Moreover, as described above, all amounts Elanco deducted from Creason's wages in 2020 and 2021 in the category it called "Vacation Buy" were unlawful wage deductions under the Indiana Wage Assignment Statute, I.C. 22-2-6-2, giving rise to Elanco's liability under the Indiana Wage Payment Statute for its failure to pay Creason all of his wages in full and on time.  Elanco owes Creason payment of all of his earned, accrued paid vacation time and/or his unlawfully deducted wages, along with an amount equal to two (2) times the amount of those vacation wages, along with payment of all of Creason's attorney's fees and costs.  These damages are pursuant to the damages provisions of I.C. 22-2-5-2.

### IV.  *PRAYER FOR RELIEF*

WHEREFORE, Creason respectfully requests that the Court enter judgment against Elanco and issue all available relief to him and to all eligible members of the Plaintiff Class, including, but not limited to, the following:

1. All damages available under the Indiana Wage Payment Statute, including all unpaid wages, all liquidated damages, and payment of all reasonable attorney's fees, costs and expenses;

2. All unpaid and underpaid wages;

3. All damages available under Indiana law, including all statutory damages, all actual damages, all liquidated damages, compensatory damages, and punitive damages;

4. All equitable relief available under Indiana law;

5. All reasonable attorney's fees and expenses;

6. Costs;

7. Prejudgment interest, if available; and

8. Any and all other relief just and proper in the premises.

Respectfully Submitted,

HASSLER KONDRAS MILLER LLP
100 Cherry St.
Terre Haute, Indiana 47807
(812) 232-9691


By/s/Robert P. Kondras, Jr.
    Robert P. Kondras, Jr.
    Attorney No. 18038-84
    Attorney for Plaintiff
    kondras@hkmlawfirm.com

### *CERTIFICATE OF SERVICE*

I hereby certify that on June 21, 2022, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Andrew B. Murphy andrew.murphy@faegredrinker.com
James R. Strickland, james.strickland@faegredrinker.com

/s/ Robert P. Kondras, Jr.
Robert P. Kondras, Jr.